**Graham L. BLAIR, Plaintiff,**

v.

**DELTA AIR LINES, INC., a Delaware corporation, Defendant.**

**No. 71–1721–Civ–CF.**

United States District Court, S. D. Florida.

May 31, 1972.

**362**

Richard W. Aschenbrenner, of the Law Offices of Fred A. Jones, Jr., Miami, Fla., for plaintiff.

William O. Mehrtens, Jr., of Smathers & Thompson, Miami, Fla., for defendant.

ORDER ON MOTION TO DISMISS AND

MOTION FOR SUMMARY JUDGMENT

FULTON, Chief Judge.

This cause came before the Court upon the defendant's motions to dismiss and for summary judgment. The original complaint was filed in state court and was removed to this Court by the defendant on November 9, 1971, on the basis of diversity of citizenship in accord with 28 U.S.C. § 1332.

The plaintiff alleges in the original complaint that the defendant airline was negligent in shipping and transporting the casket and remains of the plaintiff's deceased wife from Miami to Vicksburg, Mississippi. Plaintiff claims that as a result of defendant's negligence in loading and unloading the shipment was damaged by rain. Damages are sought for physical damage to the casket, the attempted restoration of the deceased and great mental anguish to the plaintiff. The defendant's answer set forth as an affirmative defense the tariff filed with the Civil Aeronautics Board [hereinafter C.A.B.] as constituting an absolute bar, or alternatively a limitation upon the damages recoverable by the plaintiff. Thereafter, with leave of Court the plaintiff filed an amended complaint. Count I thereof alleges substantially the same facts as the original complaint, charging the defendant with ordinary negligence. Count II alleges gross negligence on the part of the defendant through willful, wanton and malicious acts and through want of care or attention to duty or great indifference to the person, property or rights of the plaintiff and includes a claim for punitive damages.

Defendant's motions to dismiss and for summary judgment were filed May 4, 1972, and were accompanied by affidavits in support thereof, a copy of the airbill under which the remains of plain-

tiff's deceased wife were shipped, and a copy of the tariff of Delta Air Lines on file with the C.A.B., which tariff was in effect on the date of the shipment. Airbill No. 006–MIA–1311 2712 was issued May 3, 1970, as to one casket of human remains of Agnes Blair weighing 265 pounds at a charge of $54.48. No specific value was declared. The "Conditions of Contract" contained in the airbill provided, *inter alia*, as follows:

2. It is mutually agreed that the shipment described herein is . . . subject to governing classifications and tariffs in effect as of the date hereof which are filed in accordance with law. Said classifications and tariffs are available for inspection by the parties hereto and are hereby incorporated into and made a part of this contract.

3. Declared value is agreed and understood to be not more than the value stated in the governing tariffs for each pound on which charges are assessed, unless a higher value is declared herein and applicable charges paid thereon.

The provisions of the pertinent Official Air Freight Rules, Tariff No. 1–B filed with the C.A.B., are contained in Section III—Terms of Transportation and Section IV—Transportation Charges. "Exclusions From Liability" are set forth in Section III, Rule No. 30, and provide as follows:

(B) The carrier shall not be liable for loss, damage, deterioration, destruction, theft, pilferage, delay, default, misdelivery, non-delivery or any other result not caused by the actual negligence of itself, its servant or representative, acting within the scope of their authority. . . .

(C) . . . the carrier shall not be liable *in any event* for any consequential or special damages arising from transportation subject to tariffs governed by these rules, whether or not the carrier had knowledge that such damages might be incurred. (Emphasis added).

Rule No. 32 of Section III provides a "Limit of Liability" stating:

(A) In consideration of carrier's rate for the transportation of any shipment, which rate, in part, is dependent upon the value of the shipment as determined pursuant to Rule 52, the shipper and all parties having an interest in the shipment agree that the value of the shipment shall be determined in accordance with the provisions of Rule 52 and that *the total liability of the carrier shall in no event exceed the value of the shipment as so determined.*

(B) By tendering the shipment to carrier for transportation, the shipper . . . agrees to the limitations set forth in these rules and regulations . . .

(C) Except as provided in paragraphs (D) and (E) of this Rule [not applicable to this cause], *the total liability of the carrier shall in no event exceed—*

1. The value of the shipment as determined pursuant to Rule 52, or

2. . . . the actual value of the shipment, or

3. The amount of any damages actually sustained,

*whichever is the least* (emphasis added).

Rule No. 52 of Section IV states "Charges for Declared Value" as follows:

(A) Except as provided in paragraph (D) of this rule [exception not applicable to this case], a shipment shall have a declared value of $0.50 per pound (but not less than $50.00) unless a higher value is declared on the Airbill at the time of receipt of the shipment from the shipper . . .

## MOTION TO DISMISS

The defendant moves to dismiss the amended complaint pursuant to Rule 12(b) (6), Fed.R.Civ.P., for failure to state a claim in that (1) punitive damages sought in Count II of the amended complaint are not recoverable in this action under Florida substantive law, and, alternatively, (2) the tariff filed in this cause provides that plaintiff does not have a cause of action for his claim for tort damages of mental pain and anguish arising from the handling of his wife's remains by the carrier. As to the first basis of the motion to dismiss, the Supreme Court of Florida has held that in cases founded in tort punitive damages may be recovered where the wrongful act implies malice or where through want of care, attention to duty or great indifference to the rights of others, malice may be imputed. Kirksey v. Jernigan, 45 So.2d 188 (Fla.1950). In that case, the Court stated that the right to recover punitive damages is particularly appropriate where there has been a tortious interference with dead human bodies and resulting mental anguish to the surviving relatives. Kirksey v. Jernigan, *supra*, at 189.

The Fifth Circuit has considered the substantive Florida law of punitive damages, Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir. 1962), and has held that, even as to claims for punitive damages for a tortious violation of a contract, it is error to dismiss a claim for punitive damages in diversity cases applying Florida law for failure to state a claim on the basis of barebones pleadings where the complaint sets forth facts, although in broad, general terms, sufficient to support the claim. Singleton v. Foreman, 435 F.2d 962 (5th Cir. 1970); Shull v. Pilot Life Insurance Co., 313 F.2d 445 (5th Cir. 1963); *Cf.* Stanton v. Texas Company, 249 F.2d 344 (5th Cir. 1957); Gay v. Heller, 252 F.2d 313 (5th Cir. 1958). Further, the established rule in this Circuit is that:

> a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim. Cook & Nichol v. Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971)

Tested by this standard, Count II of the amended complaint sets forth sufficient facts to state a claim for punitive damages under Florida law and in all respects meets the requirements of Rule 8(a) Fed.R.Civ.P.

As to the second basis of the motion to dismiss, the defendant relies on the tariff filed with the C.A.B. to defeat the plaintiff's claim for mental anguish as a matter of law. In ruling upon a motion to dismiss, the Court is limited to matters appearing on the face of the complaint. Rule 12(b) provides:

> . . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . .

Since the tariff relates to matters outside the pleadings, defendant's motion to dismiss the amended complaint is denied as to both grounds, and the second basis for the motion shall be considered with defendant's motion for summary judgment.

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 10(J), the defendant has filed a statement of material facts as to which there is no genuine issue to be tried reciting the plaintiff's allegations of damages as to the casket, the restoration of the deceased and the plaintiff's mental anguish. The plaintiff has filed no opposing affidavits setting forth specific facts demonstrating that there is a genuine issue for trial, and in fact only a question of law is

presented. The basis for the defendant's motion for summary judgment is that the tariff filed with the C.A.B. pursuant to 49 U.S.C. § 1373 constitutes a limitation upon the damages recoverable by the plaintiff as a matter of law and that under the tariff provisions cited earlier the maximum liability of the defendant is $132.50. The plaintiff makes the following assertions: (1) that state law, not federal, is applicable to this lawsuit; (2) that this claim does not fall into the category covered by the defendant's tariff; and (3) that the tariff cannot bar a claim for gross negligence and that if such a bar exists, it is against public policy.

First, it is clear that a tariff, required by law to be filed, constitutes the law and is not merely a contract, Carter v. American Telephone and Telegraph Co., 365 F.2d 486, 496 (5th Cir. 1966); United States v. Associated Air Transport, Inc., 275 F.2d 827, 833 (5th Cir. 1960), and that with respect to such tariff federal law governs the loss of or damage to baggage or freight as a result of an air carrier's negligence. Milhizer v. Riddle Airlines, Inc., 185 F.Supp. 110 (E.D.Mich.1960), aff'd, 289 F.2d 933 (6th Cir. 1961); 8 Am.Jur.2d Aviation § 46 (1963). It is also clear that tariffs, if valid and accepted by the C.A.B., may contain exculpatory clauses for certain classes of freight and limitations of liability for loss or damage to specified property, regardless of fault, and that such provisions are not prohibited by the Federal Aviation Act of 1958, 49 U.S.C. §§ 1301 et seq. Tishman & Lipp, Inc. v. Delta Airlines, 275 F.Supp. 471, 475 (S.D.N.Y.1967), aff'd, 413 F.2d 1401 (2nd Cir. 1969); Milhizer, supra, 185 F.Supp. at 112. The established rule is that the tariffs, if valid, constitute the contract of carriage between the parties and "conclusively and exclusively govern the rights and liabilities between the parties." Mao v. Eastern Air Lines, Inc., 310 F.Supp. 844, 846 (S.D.N.Y. 1970). See also, Tishman, supra; Lichten v. Eastern Airlines, 87 F.Supp. 691 (S.D.N.Y.1949), aff'd, 189 F.2d 939 (2d Cir. 1951), Annot., 25 A.L.R.2d 1337 (1952). Thus, federal, not state, law is controlling, and the tariff filed by the defendant with the C.A.B. governs the shipment in this cause.

In Milhizer v. Riddle Airlines, Inc., 185 F.Supp. 110 (E.D.Mich.1960), aff'd, 289 F.2d 933 (6th Cir. 1961), the District Court was presented with a similar fact situation and with virtually identical tariff provisions as are present in this cause. The plaintiff had shipped the remains of her husband under an airbill of the defendant airline company but failed to declare a value upon the shipment. The plane crashed as a result of the defendant's alleged negligence thereby mutilating the remains of the deceased and causing the plaintiff mental pain and anguish. The plaintiff contended that the limitation of liability for negligence in a shipment of human remains was against public policy and that, therefore, the limitations were not applicable to her claim. In granting the defendant's motion for summary judgment limiting the defendant's liability for all claims to $179 under the applicable tariff, the Court concluded at 114 that:

. . . plaintiff and defendant in this case entered into a contract for the transportation of a box of human remains, which contract limited the liability of the defendant for loss of or damage to the box to a stated amount; that, for purposes of disposition of this case, a box of human remains is not significantly different from any other piece of freight and that, even if it were different, the same legal principles are applicable to such box as would be applicable to any other piece of freight or cargo; that federal law is applicable to determine the force to be given to a clause limiting liability in a contract for interstate transportation by an air carrier and that, under federal law, such a clause for limitation is valid.

The plaintiff asserts that he does not fall within the tariff provisions of the defendant in that the tariff is ap-

plicable only to claims of ordinary negligence and does not bar a claim of gross negligence on the part of the air carrier. It is apparent that plaintiff's contention must fail. The language of tariff Rule 30(B) does not distinguish between ordinary or gross negligence on the part of the air carrier. The Rule excludes the air carrier from liability except as to its actual negligence, of whatever degree. Further, tariff Rule 30(C) expressly states that the carrier shall not be liable in any event for special or consequential damages, and the limitation of liability provision of Rule 32(A) unambiguously states that the total liability of the carrier shall in no event exceed the value of the shipment as determined under Rule 52. The tariff provisions are clearly applicable to claims for both ordinary and gross negligence on the part of the defendant. In *Tishman, supra,* the plaintiff sought to recover the value of a lost sample case of jewelry which had been shipped by the defendant as air freight. The plaintiff maintained, *inter alia,* that the defendant was guilty of gross negligence or conversion, and therefore the defendant lost the benefit of the tariff's protection. In holding that the tariff governed the claim and that the limitation of liability provisions were applicable, the Court stated, 275 F.Supp. at 480:

> Even gross negligence or proof that an employee of the defendant actually stole the jewelry would not suffice to render the tariff inapplicable.

 Plaintiff relies upon 49 U.S.C. § 1506 of the Federal Aviation Act providing that the remedies of the Act shall not abridge or alter existing common law or statutory remedies in support of his claim that a tariff cannot alter the remedy in a suit for gross negligence. Porter v. Southeastern Aviation, Inc., 191 F.Supp. 42 (M.D.Tenn.1961), cited as authority for this proposition, involved an action for wrongful death of a passenger, and the principles enunciated therein are inapplicable to a claim for loss of or damage to baggage or freight. The plaintiff further cites to Odom v. Pacific Northern Airlines, Inc., 393 P.2d 112 (Alaska 1964), where the Supreme Court of Alaska held that tariff rules *completely exempting* a common carrier from liability for loss or damage to personal property *worn or carried aboard* an airplane by a passenger were void and that the C.A.B. does not have exclusive primary jurisdiction to adjudicate the reasonableness of such tariff rules. While this Court does not agree with the result nor the reasoning of that opinion, the Court in *Odom* expressly stated that an air carrier may lawfully *limit* liability as to *checked* baggage to an amount less than the actual loss sustained. Thus, the ruling in *Odom* is distinguishable from the facts and issues presented in this cause. Apparently, the plaintiff is attempting to challenge the validity of defendant's tariff. This challenge cannot be presented to this Court in the first instance. The applicable federal law is summarized in *Tishman, supra,* 275 F. Supp. at 475:

> In *Lichten* the court stated that it is well settled that questions of the reasonableness of rates and practices are to be left to the administrative agency in the first instance, and that under this doctrine of 'primary jurisdiction' the reasonableness of the rule could be raised only after the exhaustion of administrative remedies. It is held to be essential, in order to assure uniformity that the Board have 'primary jurisdiction' to determine the issue of reasonableness.

The principles in *Lichten* were enunciated prior to the decision of the Supreme Court in T. I. M. E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L. Ed.2d 952 (1959), which precludes referral of the issue of past reasonableness of a tariff to the C.A.B. Despite the absence of jurisdiction in the C.A.B. to determine retrospective unreasonableness, a shipper may not challenge the retrospective unreasonableness of a tariff in the courts. *Tishman, supra,* 275 F. Supp. at 477. Thus, this Court lacks jurisdiction to consider the retrospective unreasonableness of the tariff.

Finally, the plaintiff asserts that the imposition of the tariff as a bar to a claim against the defendant for gross negligence is against public policy and that such a bar would deprive the plaintiff of his constitutional right of due process. Although not presented with the question, the Court in *Tishman* indicated that a due process attack upon the tariff provisions in that case would not be sustained by either the C.A.B. or the Court. *Tishman, supra,* at 479 n. 6. Contrary to plaintiff's contentions, public policy favors the right of a carrier to determine its rates according to the risk assumed. In Southeastern Express Co. v. Pastime Amusement Co., 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20 (1936), the plaintiff sought damages for the interruption of its business when the defendant carrier failed to deliver a film in time to be shown as advertised. The carrier had filed a tariff pursuant to 49 U.S.C. § 20, the Carmack Amendment to the Interstate Commerce Act, which provided that the carrier would not be liable in any event for more than $50. The Supreme Court held that the liability of the carrier was governed by the tariff and that the limitation of liability prevented recovery of an amount in excess of its terms. The Court reasoned at 29, 57 S.Ct. at 74 as follows:

> The underlying principle is that the carrier is entitled to base rates upon value and that its compensation should bear a reasonable relation to the risk and responsibility assumed . . .
> The broad purpose of the federal act is to compel the establishment of reasonable rates and to provide for their uniform application . . .

The tariff limiting liability in this lawsuit is not contrary to public policy. Defendant's tariff provisions are valid and cover all aspects of this cause. Plaintiff had the opportunity to declare a higher value upon the shipment if he so desired. Failing to do so, the plaintiff's loss is subject to the limitations in the Air Tariff Rules which provide in Rule 32(A) that the total liability of the carrier shall in no event exceed the value of the shipment as determined in Rule 52. Rule 52, "Charges for Declared Value," provides that a shipment shall have a declared value of $0.50 per pound, but not less than $50.00, where a higher value is not declared. Since plaintiff did not declare a higher value, the shipment weighing 265 pounds results in a declared value of $132.50. Tariff Rule 32(C) provides that the total liability of the carrier shall not exceed either the value of the shipment under Rule 52, or the actual value of the shipment, or the amount of damages actually sustained, whichever is the least. In accord with the above provisions of the Official Air Freight Rules, Tariff No. 1–B, defendant's maximum liability in this cause is limited to $132.50 as a matter of law.